# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  July 23, 2015                    519938
_____

GALUSHA & SONS, LLC, et al.,
                    Respondents,

        v                                    MEMORANDUM AND ORDER

CHAMPLAIN STONE, LTD, et al.,
                    Appellants.
_____

Calendar Date:  May 27, 2015

Before:  Peters, P.J., Lahtinen, Garry and Devine, JJ.

_____

        Bond, Schoeneck & King, PLLC, Albany (Stuart F. Klein of counsel), for appellants.

        Bartlett, Pontiff, Stewart & Rhodes, PC, Glens Falls (Karla Buettner of counsel), for respondents.

_____

Garry, J.

        Appeal from an order of the Supreme Court (Krogmann, J.), entered January 27, 2014 in Washington County, upon a decision of the court in favor of plaintiffs.

        Plaintiff Galusha & Sons, LLC (hereinafter plaintiff) was engaged in the business of producing and selling aggregate stone. Plaintiff's predecessor in interest was E. Galusha & Sons (hereinafter E. Galusha), a family partnership.  In October 1992, E. Galusha entered into a 99-year lease agreement with defendant Champlain Stone, Ltd. and Champlain's president, defendant Michael Morey.  This agreement granted E. Galusha the right to operate a stone crushing business in a quarry owned by defendants, in exchange for rental payments in a specified amount per ton of the aggregate stone produced by the business, and,

among other things, provided that defendants would be given a first right of purchase in the event that E. Galusha elected to sell the business.

During 1993 and 1994, E. Galusha engaged in various preparatory activities, but removed no aggregate stone from the quarry and paid no rent to defendants. In March 1995, while some blasting was occurring at the site, defendants sent a letter to Daniel Galusha, a principal of E. Galusha and a shareholder in plaintiff. This letter stated that defendants considered the failure to commence the stone crushing business to be a violation of the lease, and warned that defendants would declare the lease to be null and void if operations were not commenced within 90 days. Shortly thereafter, E. Galusha assigned "all right, title and interest" in the lease agreement to plaintiff.[1] Thereafter, the parties conducted discussions in an effort to resolve their differences. In December 1995, plaintiff removed some rock produced by the March 1995 blast from the quarry and paid rent to defendants at the rate specified in the lease. In April 1996, Morey advised Daniel Galusha (hereinafter Galusha) in writing that defendants viewed the lease as null and void, as the demands of the March 1995 letter had not been complied with. Morey directed Galusha to remove his equipment from the property and warned that defendants would initiate legal action if he did not do so. In June 1996, defendants' counsel advised plaintiff's counsel that the lease had been rescinded by the April 1996 letter, and that plaintiff had no right to enter the property.

In August 1996, Galusha collaborated with a third party to form plaintiff Jointa Galusha, LLC (hereinafter Jointa), and assigned the lease agreement to Jointa. In January 1999, Galusha informed defendants that he planned to remove previously blasted stone from the quarry and to conduct additional mining there on a regular basis thereafter. One week later, defendants responded that the lease agreement was null and void and that Galusha had no authorization to conduct activities in the quarry.

---

[1]  Defendants do not challenge the validity of this assignment or contend that it violated the lease.

In April 1999, plaintiffs commenced the instant action for breach of contract, seeking, among other things, money damages and specific performance under the lease agreement. Defendants answered and asserted counterclaims alleging that plaintiff breached the lease agreement by selling the stone crushing business to Jointa without offering defendants a first right of purchase. Following a bifurcated bench trial on the issue of liability, Supreme Court found, as pertinent here, that defendants materially breached the agreement in April 1996 by unilaterally declaring the lease agreement to be null and void, and that plaintiffs were entitled to damages in an amount to be determined in a subsequent inquest.[2] Defendants appeal.

Defendants contend that Supreme Court erred in determining that they materially breached the agreement in April 1996 and that, instead, plaintiff was the first to breach the agreement when it transferred the stone crushing business to Jointa several months later. To establish their claim for breach of contract, plaintiffs were required to prove that a contract existed, that plaintiffs performed their obligations under the contract, that defendants breached the contract and that damages resulted (see Clearmont Prop., LLC v Eisner, 58 AD3d 1052, 1055 [2009]). Here, it is undisputed that the lease agreement was a valid and enforceable contract. As for performance, Supreme Court found that the activities that E. Galusha and plaintiff conducted after executing the lease were sufficient to constitute performance within a reasonable time (see Savasta v 470 Newport Assoc., 82 NY2d 763, 765 [1993]; Tedeschi v Northland Bldrs., LLC, 74 AD3d 1613, 1614 [2010]). Defendants raise no challenge to this determination upon appeal, thus abandoning any related arguments (see Battaglia v Town of Bethlehem, 46 AD3d 1151, 1154 [2007]). Instead, they contend that the court erred in determining that

_____

[2] With considerable dismay, we note that Supreme Court's decision was issued in January 2014, more than nine years after the December 2005 trial. The first period of this prolonged delay may apparently be attributed to the parties, who delivered their final posttrial submissions in August 2009. Inexplicably, this was followed by a period of almost 4½ years while the decision remained pending before the court.

defendants' April 1996 letter constituted a breach of the lease agreement, arguing that plaintiffs were not actually denied access to the quarry until defendants advised them in 1999 that they were not authorized to conduct activities there.  We reject this argument, and agree with Supreme Court that the April 1996 letter constituted a breach of the lease agreement.

"In the case of every contract there is an implied undertaking on the part of each party that he [or she] will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his [or her] part" (Syracuse Orthopedic Specialists, P.C. v Hootnick, 42 AD3d 890, 892 [2007] [internal quotation marks and citation omitted]; see Wieder v Skala, 80 NY2d 628, 637 [1992]; Bass v Sevits, 78 AD2d 926, 927 [1980]; 10-53 Corbin on Contracts § 53.5 [2015]).  In the April 1996 letter, Morey advised Galusha that the lease was null and void, threatened legal action if plaintiff did not "promptly" remove its equipment from the quarry, and stated that Morey did not consider himself bound by the lease because it was void.  Two months later, defendants' counsel advised plaintiff's counsel that it was defendants' position that the lease had been rescinded and that plaintiff "ha[d] no right to enter upon the property."  Contrary to defendants' claim, the January 1999 letter did not deny access to the quarry for the first time, but merely repeated the previously-stated claims that the lease was null and void and that plaintiffs were not authorized to enter the quarry.  "[R]efusing to permit the other party to perform is a breach of contract" (22A NY Jur 2d, Contracts § 433).  Here, defendants' unilateral declaration that the lease was null and void, and their threat of legal action if plaintiff did not promptly remove its equipment, followed shortly thereafter by the statement of defendants' counsel that plaintiff had no right to enter the property, constituted a refusal to permit plaintiff to perform.  Exercising our broad factual review power to independently assess the evidence while deferring to the trial court's credibility assessments (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]; Sterling v Sterling, 21 AD3d 663, 665 [2005]), and in view of the court's determination that plaintiff performed its obligations under the lease before the April 1996 letter, we find that the record evidence supports the court's determination

(compare Greenspan v Amsterdam, 145 AD2d 535, 536 [1988]).

Peters, P.J., Lahtinen and Devine, JJ., concur.


ORDERED that the order is affirmed, with costs.




ENTER:

Robert D. Mayberger
Clerk of the Court